**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| Tilted Kilt Franchise Ltd. Liability Company, | ) ) ) | C/A No.: _____ |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT FOR INJUNCTIVE AND** |
| The Kilted Caddy Club, LLC d/b/a The Kilted Caddy Club & Café, East Coast Golf Management d/b/a Azalea Sands Golf Club, Crazy Horse Saloon and Restaurant, Inc. d/b/a Thee Doll House, M J Peter and Associates, and Michael J. Peter, an individual, | ) ) ) ) ) ) ) ) ) | **MONETARY RELIEF AND DEMAND** **FOR JURY TRIAL** |
| Defendants. | ) ) | |

Plaintiff, Tilted Kilt Franchise Ltd. Liability Company, a Wyoming limited liability company, ("Plaintiff") hereby files this Complaint against The Kilted Caddy Club, LLC d/b/a The Kilted Caddy Club & Café, East Coast Golf Management d/b/a Azalea Sands Golf Club, Crazy Horse Saloon and Restaurant, Inc. d/b/a Thee Doll House, M J Peters and Associates, and Michael J. Peter, and alleges on personal knowledge as to itself and its actions, and upon information and belief as to the actions of others, as follows:

<u>**THE PARTIES**</u>

1.      Plaintiff is a Wyoming limited liability company with its executive offices in Tempe, Arizona. Plaintiff is the owner of the trademarks and trade dress associated with the TILTED KILT® bars and restaurants.  Plaintiff licenses the use of its marks to Tilted Kilt Franchise Operating, LLC, which has franchise and license agreements with the owners of individual and multiple TILTED KILT® restaurants in over 90 locations across the United States and Canada,

1

including Myrtle Beach and Columbia, South Carolina.

2.    Defendant The Kilted Caddy Club, LLC is a South Carolina limited liability company doing business as "The Kilted Caddy Club & Café" ("Defendant Kilted Caddy").

3.    Defendant East Coast Golf Management, Inc. is a South Carolina corporation doing business as "Azalea Sands Golf Club" ("Defendant Azalea Sands").

4.    Defendant Crazy Horse Saloon and Restaurant, Inc. is a South Carolina corporation which, upon information and belief, is doing business as "Thee Doll House" ("Defendant Thee Doll House").

5.    Upon information, Defendant M. J. Peter and Associates is a foreign corporation transacting business in the State of South Carolina ("Defendant Peter and Associates").

6.    On information and belief, Defendant Michael J. Peter is the owner and operator of Defendants Thee Doll House and Kilted Caddy, and transacts business in Myrtle Beach, South Carolina ("Defendant Peter").

7.    Defendant Kilted Caddy, Defendant Thee Doll House, Defendant Azalea Sands, Defendant Peter and Associates, and Defendant Peter are collectively referred to hereinafter as "Defendants."

## JURISDICTION AND VENUE

8.    This is an action for trademark infringement, false designation of origin, cybersquatting and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, the Anticybersquatting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), the Federal Trademark Dilution Act of 1995, the Trademark Dilution Revision Act of 2006, and the Prioritizing Resources and Organization  for Intellectual  Property  Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for common law trademark infringement and

unlawful and deceptive acts and practices under the laws of the State of South Carolina.

9.      This Court has subject matter jurisdiction in this case under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  In addition to claims under federal trademark laws, 15 U.S.C. §§ 1051 *et seq.*, this complaint alleges unfair-competition, false-designation of origin, claims and cyber-squatting claims, which are substantially related to the trademark claims.

10.     Also, this Court has jurisdiction in this case under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1400 because the acts of infringement were committed in this District.

12.     Personal jurisdiction is proper in this Court because Defendants have engaged in business in the State of South Carolina, and this action arises out of business conducted in South Carolina by the Defendants.

13.     Personal jurisdiction is also proper because, upon information and belief, Defendants are residents of this State, own or lease property in this State, and/or transact business in this State.

### PLAINTIFF'S BUSINESS ACTIVITIES, TRADEMARKS, TRADEMARK REGISTRATIONS AND DOMAIN NAMES

14.     Plaintiff licenses the operation and franchising of the operation of restaurants that provide restaurant and bar services, and sell food and beverage products and other related  goods and services (the "Plaintiff's Goods and Services").

15.     Plaintiff's Goods and Services are provided at over 92 separate locations throughout the United States, including South Carolina.

16.     Plaintiff identifies Plaintiff's Goods and Services in U.S. commerce using the following

word marks, among others: TILTED KILT®; TILTED KILT PUB & EATERY®; KILT®; KILT GIRLS® and GET INTO THE KILT® ("Plaintiff's Word Marks").

17.    The U.S. Patent and Trademark Office ("USPTO") issued Reg. No. 3,944,293, and Reg. No. 3,928,728 and Reg. No. 3,334,851, and Reg. No. 2,999,841 respectively, to Plaintiff of KILT® and TILTED KILT® for "restaurant and bar services" and TILTED KILT PUB & EATERY® and TILTED KILT® for "restaurant services" ("Plaintiffs Registered Word Marks").

18.    Plaintiff first used one of Plaintiff's Registered Word Marks in U.S. commerce to identify Plaintiff's Goods and Services as early as 2003.

19.    Plaintiff filed with the USPTO on May 16, 2006 and January 30, 2004, the applications for USPTO registration of the TILTED KILT PUB & EATERY® and TILTED KILT® Registered Word Marks, respectively.

20.    Plaintiff also filed with the USPTO on April 12, 2011, and March 8, 2011, the applications for the USPTO registration of the KILT® and TILTED KILT® Registered Word Marks, respectively.

21.    Copies of the USPTO registration certificates for Plaintiff's Registered Word Marks are attached as Exhibit A.

22.    Plaintiff identifies Plaintiff's Goods and Services in U.S. commerce by using the following design marks, among others ("Plaintiff's Design Marks"):

   

  

23.     The USPTO issued Reg. Nos. 3,488,707 and 3,959,979 and 4,002,400 and 4,189,961 to Plaintiff of the following design marks for "restaurant and bar services" ("Plaintiff's Registered Design Marks"):

    

24.      Plaintiff, through a predecessor, first used one of Plaintiff's Registered Design Marks in U.S. commerce to identify Plaintiff's Goods and Services as early as 2003.

25.     Plaintiff filed with the USPTO on May 16, 2006 and Dec. 11, 2011, respectively, its applications for the USPTO registrations of the following of Plaintiff's Registered Design Marks:

 

26.     Plaintiff's Design Marks include the server costume depicted below (the "Tilted Kilt

5

Server Costume"):



27.    The USPTO issued Reg. No. 4058758 to Plaintiff for the Tilted Kilt Server Costume, also depicted in the image below, on November 22, 2011:



28.    Copies of the USPTO registration certificates for Plaintiff's Registered Design Marks are attached as Exhibit B.

29.    Plaintiff uses the following Internet domain names: www.tiltedkilt.com and www.kiltgear.com ("Plaintiff's Domain Names").

30.    Plaintiff uses Plaintiff's Domain Names to provide access to a web site that displays Plaintiff's Design Marks and Plaintiff's Word Marks in connection with information about Plaintiff's Goods and Services ("Plaintiff's Web Sites"). A copy of Plaintiff's Web Site home page is attached as Exhibit C.

31.    Plaintiff registered the www.tiltedkilt.com domain name on February 27, 2003.

32.    Plaintiff registered the www.kiltgear.com domain name on February 17, 2006.

33.    Plaintiff's Web Site uses Plaintiff's Word Marks, Plaintiff's Registered Word Marks, Plaintiff's Design Marks, and Plaintiff's Registered Design Marks, (collectively, "Plaintiff's Marks") to provide information on Plaintiff's Goods and Services, including the locations of Plaintiff's restaurants. Plaintiff's Web Site also provides information on Plaintiff's food and beverage products and related goods and services.

34.    Plaintiff advertises in print and other media, including television, using Plaintiff's Marks. Copies of some of these advertisements are attached as Exhibit D.

35.    Plaintiff, including the restaurant located in Myrtle Beach, also uses its Marks in connection with golf promotions around the country.  Plaintiff's use of its Marks in connection with the sponsorship of special golf tournaments is demonstrated in the images attached as Exhibit E.

36.    Plaintiff's Tilted Kilt Server Costume, in connection with a golf theme, has also appeared prominently in Plaintiff's advertising, as shown by the image below:



37.    Media reports and reviews of Plaintiff's Goods and Services have referred to the Plaintiff's Goods and Services using Plaintiff's Marks.  For example, Plaintiff's restaurants were the subject of an "Undercover Boss" episode that aired nationally on January 11, 2013.

38.    Due to Plaintiff's promotional efforts and the quality of Plaintiff's Goods and Services,

Plaintiff's Marks are well known in the food and beverage industry and to the public at large as referring exclusively to Plaintiff's Goods and Services.

39.    Due to that awareness, Plaintiff has substantial and exceedingly valuable goodwill in connection with Plaintiff's Marks.

### DEFENDANTS' BUSINESS ACTIVITIES, CLUB NAMES, CLUB LOGO, UNIFORMS, TRADEMARK APPLICATION AND DOMAIN NAMES

40.    Defendants, either individually or in concert, are operating a business at the Azalea Sands Golf Club located in Myrtle Beach, South Carolina sometimes called "The Kilted Caddy Club & Café" (the "Defendants' Club").

41.    Defendants' Club provides a wide variety of goods and services, including but not limited to, providing golf facilities, golf course services, golf club services, clubhouse services, golf instructions, golf caddy services, organization and arrangement of golf tournaments and competitions, rental of golf equipment, bar services, catering services, cocktail lounge services, restaurant services, retail shop selling golf related merchandise and clothing, athletic apparel, clothing, clothing accessories, and other general merchandise ("Defendants' Services").

42.    Defendants provide Defendants' Services using the following names: "The Kilted Caddy Club & Cafe", "The Kilted Caddy Club," and/or "Kilted Caddy" ("Defendants' Club Names").

43.    Defendants' Club displays the "Kilted Caddy" and "The Kilted Caddy Club" names as part of the design shown below ("Defendants' Club Logo"):



44.    Defendants' first use of Defendants' Club Names and Defendants' Club Logo in connection with the promotion and advertising of Defendants' Services to the public began sometime after January 1, 2014.

45.    Defendants' Club Names and Defendants' Club Logo are, and have been, used on an Internet web site, accessible at the following domain names: www.thekiltedcaddy.com and www.kiltedcaddyclub.com ("Defendants' Domain Names").

46.    The registered owner of Defendants' Domain Names is identified as "M J Peter and Associates." The Domain Names were registered on February 3, 2014.

47.    Defendants' Domain Names were registered without Plaintiff's knowledge or authorization.

48.    Defendants' Domain Names are active domain names that direct the public to websites displaying information about the Defendant's Club and using the "The Kilted Caddy Club & Cafe" and "Kilted Caddy" names (the "Defendants' Websites").

49.    Defendants' Websites display, or have displayed, information about Defendants' Services.

50.    Defendant Peter filed with the USPTO on April 24, 2014, application Serial Number 86262210, seeking USPTO registration of the "The Kilted Caddy Club" name as a mark for various goods and services, including "restaurant services" and "bar services." ("Defendants' Trademark Application"). A summary of the USPTO record for Defendant's Trademark Application is attached as Exhibit F to this complaint.

51.    Defendants' Trademark Application states that the applicant (Defendant Peter) intends to use the "The Kilted Caddy Club" name as a mark in connection with "restaurant services" and "bar services" in U.S. commerce

52.    Defendants' Club conducted a Grand Opening event on or about June 7, 2014.

53.    Defendants' advertising and promotion of their goods and services have included images of models wearing uniforms that consist in part of plaid skirts, knee-length white socks, and white shirts ("Defendants' Uniforms").

54.    The "Grand Opening" of Defendants' Club was advertised with a billboard, as shown in the image below:



55.    The 2014 Summer Golf Classic at the Possum Trot Golf Course on Saturday June 21st was promoted through the publication of the advertisement shown below:



56.    The June 21 Summer Gold Classic has been promoted on the Facebook Page through the use of the images shown below:





57.     On May 19, 2014, a representative of the Kilted Caddy Club & Café visited the TILTED

KILT® in Myrtle Beach and left the following business card:



58.    Defendants' Websites promote, or have promoted, a Facebook page for the Club at:

http://www.facebook.com/TheKiltedCaddyClub (the "Defendants' Facebook Page").

59.    Defendants' Facebook Page displays (or has displayed) photographic images of a model

wearing the uniform shown in the image below:



60.    Promotional messages on the Defendants' Facebook Page refer repeatedly to the

Defendants' Club as "The Kilted Caddy Club & Café."

61.    An excerpt from a promotional message about Defendants' Club that appeared on

Defendants' Facebook Page is attached as Exhibit G  to this complaint.

62.    Defendants' Club Names mimic distinctive elements of Plaintiff's Marks and incorporate

critical elements that have become identified in the public mind with Plaintiff's Goods and

Services.

63.    Defendants' Club Logo includes one of Defendants' Club Names.

64.    Defendants' Domain Names incorporate distinctive elements of Plaintiff's Marks.

65.    Defendants' Uniforms are substantially similar to the Tilted Kilt Server Costume.

66.    Defendants' Services are identical or substantially similar to the Plaintiff's Goods and Services.

67.    Defendants' Services are services others might reasonably expect Plaintiff to provide, or license others to provide, using Plaintiff's Marks.

68.    Plaintiff has no control over the quality of Defendants' Services, provided by Defendants under the Defendants' Club Names, Defendants' Club Logos, Defendants' Uniforms, or Defendants' Domain Names.

69.    Defendants' Services, provided using Defendants' Club Names, Defendants' Club Logos, Defendants' Server Uniforms, and Defendants' Domain Names, are likely to be encountered by consumers and prospective consumers of Plaintiff's Goods and Services.

70.    The encounters described above are likely to occur under circumstances or situations in which certain consumers could reasonably believe the Defendants' Services have a common origin, sponsorship or affiliation with Plaintiff's Goods and Services.

71.    Defendants use, and have used, the Defendants' Club Names, Defendants' Club Logos, Defendants' Uniforms, and the Defendants' Domain Names without Plaintiff's authorization.

72.    Upon information and belief, Defendants are using, and/or have used, the Defendants' Club Names, Defendants' Uniforms, and Defendants' Domain Names with full knowledge of Plaintiff's prior rights to Plaintiff's Marks.

73.    Upon information and belief, Defendants are using, and have used, Defendants' Club Names, Defendants' Uniforms, and Defendants' Domain Names with the intent to trade upon the valuable goodwill established by Plaintiff in Plaintiff's Marks.

74.    Defendants' use of Defendants' Club Names, Defendants' Uniforms, and Defendants' Club Logos and/or the Defendants' Domain Names creates, or has a reasonable likelihood of creating, customer confusion between the Plaintiff's Goods and Services and Defendants' Services.

75.    Plaintiff has invested substantial effort, including the expenditure of millions of dollars, to develop goodwill in Plaintiff's Marks and to cause consumers to recognize Plaintiff's Marks as distinctively designating goods and services originating with Plaintiff.

76.    The value of the goodwill developed by Plaintiff is impossible to calculate precisely, but because Plaintiff operates throughout the U.S. and is widely known for providing its Goods and Services, the value of the goodwill exceeds millions of dollars.

77.    The confusion created by Defendants' use of Defendants' Club Names, Defendants' Club Logos, Defendants' Uniforms, and Defendants' Domain Names is damaging the reputation and goodwill that Plaintiff has created in Plaintiff's Marks.

78.    Defendant Peter, as the owner and operator of The Kilted Caddy Club & Café and Thee Doll House, selected and adopted the Plaintiff's Marks for use by his companies and orchestrates and controls their operations.  As an owner of Defendants Kilted Caddy and Thee Doll House, he receives a direct benefit from the infringing activities.

79.    Upon information, Defendant Azalea Sands, as the owner and operator of the Azalea Sands Golf Club, has contracted with one or more of the other Defendants for the operation of the Kilted Caddy Club & Café, and receives a direct benefit from the infringing activities.

## COUNT ONE

## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

80.    Plaintiff incorporates in this Count One all allegations contained in this Complaint.

81.    In the short period of time since Defendants have been promoting their goods and services through Defendants' Club Names, Defendants' Club Logos, Defendants' Uniforms, and Defendants' Domain Names, Defendants' acts have caused actual confusion among the public concerning the source and origin of Defendants' goods and services.  Defendants' acts have actually caused, and are likely to continue to cause, confusion, mistake or deception and the public is likely to believe mistakenly, that Defendants' Services have their source or origin with Plaintiff or are in some manner approved by, associated with, sponsored by or connected with Plaintiff, all in violation of 15 U.S.C. § 1114.

82.    Upon information and belief, Defendants' actions were undertaken willfully and with the intent to confuse and deceive the public.

83.    Defendants' acts have damaged Plaintiff's business, reputation and goodwill and have interfered with Plaintiff's use of its own marks.

84.    Defendants have caused, and unless enjoined, will cause irreparable harm and injury to Plaintiff for which there is no adequate remedy at law.

85.    Defendants should be, upon final hearing, permanently enjoined from using Defendants' Club Names, Defendants' Uniforms, and Defendants' Club Logos (the "Infringing Marks") and Defendants' Domain Names ("Infringing Domain Names"), pursuant to 15 U.S.C. § 1116.

86.    Plaintiff is entitled, under 15 U.S.C. § 117, to recover from Defendants: (i) Defendants' profits in providing Defendants' Services using the Infringing Marks or Infringing Domain Name; (ii) damages sustained by Plaintiff due to Defendants' providing of Defendants' Services

using the Infringing Marks and/or the Infringing Domain Name, (iii) the costs of this action, and (iv) exceptional damages for intentional infringement, bad faith and willful conduct, equal to three times profits or damages, whichever is greater, and (v) attorneys' fees.

87.    Furthermore, Plaintiff seeks an order from this Court under 15 U.S.C. § 1118 compelling Defendants to destroy all materials bearing Infringing Marks and/or Infringing Domain Names and to transfer registration and ownership of the Infringing Domain Names to Plaintiff.

**COUNT TWO**

**FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

88.    Plaintiff incorporates in this Count Two all previous allegations contained in this Complaint.

89.    The aforesaid activities of Defendants have actually caused, and are likely to continue to cause, confusion or misunderstanding as to the source, origin, sponsorship or approval of their services, and constitute infringement of Plaintiff's Marks and unfair competition, in violation of common law trademark and unfair competition principles.

90.    Defendants' actions have damaged Plaintiff's business, reputation and goodwill and have interfered with Plaintiff's use of its own marks.

91.    Unless restrained  and enjoined by this Court, Defendants will persist  in  their activities, causing irreparable harm and injury to Plaintiff for which there is no adequate remedy at law.

92.    Defendants should be, upon final hearing, permanently enjoined from using the Infringing Marks and Infringing Domain Names, pursuant to 15 U.S.C. § 1116.

93.    Plaintiff is entitled, under 15 U.S.C. § 1117, to recover from Defendants: (i) Defendants' profits in providing Defendants' Services using the Infringing Marks and Infringing Domain Names; (ii) damages sustained by Plaintiff due to Defendants' providing of Defendants' Services

using the Infringing Marks and/or Infringing Domain Names; (iii) the costs of this action; (iv) exceptional damages for intentional infringement, and bad faith and willful conduct, equal to three times profits or damages, whichever is greater; and (v) attorneys' fees.

94.    Furthermore, Plaintiff seeks an order from this Court under 15 U.S.C. § 1118 compelling Defendants to destroy all materials bearing the Infringing Marks and/or Infringing Domain Names and to transfer ownership and registration of the Infringing Domain Names to Plaintiff.

## COUNT THREE

### FEDERAL FALSE DESIGNATION OF ORIGIN AND REPRESENTATION (15 U.S.C.§ 1125(a))

95.    Plaintiff incorporates in this Count Three all previous allegations contained in this Complaint.

96.    Defendants' use of the Infringing Marks and Infringing Domain Names to identify Defendants' Services represents a false designation of origin that has actually caused, and is likely to continue to cause, confusion, mistake and deception as to the affiliation, connection or association between Defendants' Services and the goods, services and commercial activities of Plaintiff, all in violation of 15 U.S.C. § 1125(a)(1)(A).

97.    Defendants' actions have damaged, or may damage, Plaintiff's business, reputation and goodwill and, unless enjoined, will cause, or are reasonably likely to cause, irreparable harm to Plaintiff for which there is no adequate remedy at law.

98.    Defendants should be, upon final hearing, permanently enjoined from using the Infringing Marks and Infringing Domain Names, pursuant to 15 U.S.C. § 1116.

99.    Plaintiff is entitled, under 15 U.S.C. § 1117, to recover from Defendants: (i) Defendants' profits in providing Defendants' Services using the Infringing Marks and Infringing Domain

Names; (ii) damages sustained by Plaintiff due to Defendants' providing Defendants' Services using the Infringing Marks and infringing Domain Names; (iii) the costs of this action; (iv) exceptional damages for intentional infringement, and bad faith and willful conduct, equal to three times profits or damages, whichever is greater; and (v) attorneys' fees.

100.    Furthermore, Plaintiff seeks an order from this Court  under  15 U.S.C. § 1118 compelling Defendants to destroy all materials bearing the Infringing Marks and/or Infringing Domain Names and to transfer  ownership and registration of the Infringing Domain Names to Plaintiff.

## COUNT FOUR

### CYBERSQUATTING UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)(l))

101.    Plaintiff incorporates in this Count Four all previous allegations contained in this Complaint.

102.    Plaintiff's Word Marks were distinctive and/or famous at the time of the registration of the Infringing Domain Names.

103.    The Infringing Domain Names registered or used by Defendants are confusingly similar to Plaintiff's Word Marks.

104.    Defendants registered or have used the Infringing Domain Names with bad faith intent to profit from Plaintiff's Marks.

105.    For these reasons, Defendants' registration and Defendants' use of the Infringing Domain Names violates§ 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

106.    Unless restrained and enjoined by this court, Defendants will persist in the activities, causing irreparable harm and injury to Plaintiff for which there is no adequate remedy at law.

107.    Defendants should be, upon final hearing, permanently enjoined from using the

Infringing Domain Names pursuant to 15 U.S.C. § 1116.

108.    Plaintiff is entitled, under 15 U.S.C. § 1117 to recover from Defendants: (i) Defendants' profits in providing Defendants' Services using the Infringing Domain Names; (ii) damages sustained by Plaintiff due to Defendants provision of Defendants' Services using the Infringing Domain Names; (iii) the costs of this action; (iv) exceptional damages for intentional infringement, and bad faith and willful conduct, equal to three times profits or damages, whichever is greater; and (v) attorneys' fees.

109.    Furthermore, Plaintiff seeks an Order from this Court under 15 U.S.C. § 1118 compelling Defendants to destroy all materials bearing the Infringing Domain Names, and to transfer ownership and registration of the Infringing Domain Names to Plaintiff.

## COUNT FIVE

## COMMON LAW TRADEMARK INFRINGEMENT

110.    Plaintiff incorporates in this Count Five all previous allegations contained in this Complaint.

111.    This cause of action for infringement arises under the common law of the State of South Carolina.

112.    Defendants' use of the Infringing Marks and Infringing Domain Names has actually caused, and is likely to continue to cause, confusion, mistake or deception as to the source, origin, sponsorship or approval of Defendants' Services and constitutes infringement of Plaintiff's Marks under the common law of the State of South Carolina.

113.     By their actions, Defendants have infringed Plaintiff's Marks deliberately and with the intention of wrongfully trading on the goodwill and reputation symbolized by Plaintiff's Marks.

114.    Plaintiff is entitled to an award of damages from  Defendants for the loss of business and

other monetary losses that Plaintiff has suffered and will continue to suffer in the future as a proximate result of Defendants' misappropriation and infringement of Plaintiff's Marks. Alternatively, Plaintiff is entitled to recover damages in an amount equivalent to the amount of profits that Defendants have derived and may continue to derive as a result of their unlawful misappropriation and infringement of Plaintiff's Marks.

115.    Defendants' conduct as described above has been willful, deliberate, malicious, and with the intent to injure Plaintiff.  Therefore, Plaintiff is also entitled to recover exemplary damages from Defendants to punish Defendants and to deter Defendants and others similarly situated from engaging in similar wrongful conduct in the future.

116.    Defendants should also be, upon final hearing, permanently enjoined from using the Infringing Marks and Infringing Domain Names.

## COUNT SIX

## FEDERAL AND STATE LAW DILUTION

117.    Plaintiff incorporates in this Count Six all previous allegations contained in this Complaint.

118.    Plaintiff's Marks are inherently distinctive and have acquired distinctiveness through the long, continuous, and exclusive use of the Plaintiff's Marks.

119.    Some of Plaintiff's Marks have been used to promote goods and services to the consuming public since as early as 2003.

120.    The general consuming public widely recognizes Plaintiff's Marks as designations of the source and quality of Plaintiff's Goods and Services.

121.    Plaintiff's Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c), because of (i) the duration, extent, and geographic reach of advertising and publicity of the

Marks, (ii) the amount, volume, and geographic extent of sales of Plaintiff's Goods and Services offered under the Marks, and (iii) the extent of actual recognition of the Marks.

122.    Defendants' use of the Infringing Marks in connection with goods and services associated with Plaintiff's Marks impairs the distinctiveness of Plaintiff's Marks.

123.    Defendants' use of the Infringing Marks in connection with the goods and services associated with Plaintiff's Marks harms the reputation and otherwise reduces the goodwill associated with Plaintiff's Marks.

124.    Defendants' use of the Infringing Marks in connection with the goods and services associated with Plaintiff's Marks reduces the consuming public's exclusive association of the Plaintiff's Marks with Plaintiff's goods and services.

125.    Defendants' use of the Infringing Marks in connection with goods and services associated with Plaintiff's Marks is likely to cause dilution by blurring or tarnishment of Plaintiff's Marks under 15 U.S.C. § 1125(c).

126.    Defendants' use of the Infringing Marks in connection with goods and services associated with Plaintiff's Marks constitutes dilution by blurring or tarnishment of Plaintiff's Marks under S.C. Code § 39-15-1165.

127.    Defendants' use of the Infringing Marks in connection with goods and services associated with Plaintiff's Marks began after the Plaintiff's Marks acquired fame, and such use has been intentional and with knowledge of the Plaintiff's Marks.

128.    Plaintiff has been damaged as a direct and proximate result of Defendants' dilution of the Plaintiff's Marks.

129.    Plaintiff will continue to be damaged as a direct and proximate result of Defendants' dilution of the Plaintiff's Marks unless and until Defendants are enjoined from further depiction

of the Infringing Marks in connection with goods and services associated with Plaintiff's Marks.

## COUNT SEVEN

### UNLAWFUL DECEPTIVE ACTS AND PRACTICES
(South Carolina Unfair Trade Practices Act, § 39-5-10, et seq.)

130.    Plaintiff incorporates in this Count Seven all previous allegations contained in this Complaint.

131.    As set forth in detail above, Defendants have engaged in unlawful, unfair or fraudulent business practices in violation of South Carolina Code Ann. § 39-5-10, *et seq.*, as well as acts of unfair competition in violation of the common law.

132.    Among other things, Defendants' activities create the impression that Defendants' goods and services have been approved, licensed, sponsored or authorized by Plaintiff.

133.    In addition, Defendants' aforesaid wrongful acts and unauthorized use of the Infringing Marks and use of Infringing Domain Names that are identical with or confusingly similar to Plaintiff's Marks constitutes unfair competition.

134.    Defendants' conduct was and is intentional and in deliberate disregard of the rights of Plaintiff. By reason thereof, Plaintiff is entitled to recover not only Defendants' profits and Defendants' actual damages, but also punitive or exemplary damages in an amount sufficient to deter Defendants from similar conduct in the future.

135.    The unlawful, unfair and/or fraudulent business practices of Defendants are likely to continue and therefore will continue to mislead the public by presenting false facts about the Plaintiff's Goods and Services.

136.    Defendants have also wrongfully profited from selling goods and services in commerce that infringe upon, dilute or violate Plaintiff's Marks.

137.    Defendants should be, upon final hearing, permanently enjoined from using the

Infringing Marks and the Infringing Domain Names.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests a judgment against Defendants as follows:

A.    Temporarily, preliminarily and permanently restraining and enjoining Defendants from: (1) selling any products and offering any services under the Infringing Marks and/or the Infringing Domain Names or any variations thereof in or as part of the title or name of any business or service or commercial activity, Internet domain name, Facebook page or other social media; website home page or website; (2) using the Infringing Marks and/or Infringing Domain Names or any variations thereof in or as part of the title or name of any business or service or commercial activity or as a key word, search word, or as any part of the description of a web site or in any submission for registration of any Internet web site with a search engine or index or as the name for any Facebook page or page or identifier for any other social media or in any e-mail address; (3) using the Infringing Marks and/or Infringing Domain Names or any other identical or similar mark, word or name for any bar, tavern, pub, or restaurant, or as any service mark, trade name or corporate name, Internet domain name or social network page name or social media identifier; or in any manner likely to cause confusion, mistake or deception; and (4) filing or pursuing any application for registration of Infringing Marks, the Plaintiff's Marks and/or the Infringing Domain Names as a trademark or service mark or trade name or Internet domain name in any jurisdiction in the U.S.

B.    Temporarily, preliminarily and permanently restraining and enjoining Defendants from: (1) using Plaintiff's Marks or any variations thereof in or as part of the title or name of any business or service or commercial activity, Internet domain name, website home page or website or social network page name or social media identifier; (2) using Plaintiff's Marks or Plaintiff's

Domain Names or any variation thereof in or as part of the title or Internet domain name or name of any business or service or commercial activity or as a key word, search word, or as any part of the description of a web site or in any submission for registration of any Internet web site with a search engine or index or social network page name or social media identifier; (3) using Plaintiff's Marks or Plaintiff's Domain Names or any other identical or similar mark, word or name as a trademark, service mark, trade name or corporate name, domain name or social network page or social media identifier or in any manner likely to cause confusion, mistake or deception; and (4) filing or pursuing any application for registration in any jurisdiction in the U.S. of the Infringing Marks and/or Infringing Domain Names or any other mark, design, word or name as trademark or service mark or trade name or domain name or social network page or social media identifier identical or similar to Plaintiff's Marks and/or Plaintiff's Domain Names.

  C.  Directing Defendants to (1) notify all customers, distributors, advertisers and other persons, involved in Defendants' offer of, or attempt to offer, Defendant's Services under or using the Infringing Marks and/or Infringing Domain Names, that Plaintiff's Marks are owned and controlled exclusively by and for the benefit of Plaintiff; (2) deliver to Plaintiff to be destroyed all uniforms, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession and bearing Infringing Marks and/or Infringing Domain Names (or any other name, or other designation, description, or representation that violates § 112S(a)) or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same; (3) remove from the Defendants' Club and websites and Facebook pages and e-mail address(es) all references to the Infringing Marks and/or the Infringing Domain Names (including references in signage, menus, and other displays or promotional material); (4) withdraw Defendants' Trademark Application from the USPTO;

and (5) provide all documentation and approvals necessary to effect a transfer to Plaintiff of the registration of the Infringing Domain Names.

D.     Awarding Plaintiff its statutory damages and/or its actual damages in an amount to be proved at trial;

E.     Ordering an accounting by Defendants of all revenues and profits derived from the providing of services through the unauthorized use of Infringing Marks and/or Infringing Domain Names;

F.     Awarding Plaintiff the amount by which Defendants have been unjustly enriched by their wrongful acts;

G.     Awarding Plaintiff its costs and reasonable attorneys' fees incurred in connection with this action; and

H.     Awarding Plaintiff such other and further relief that is just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims as to which a jury trial may be permitted.


Dated: June 20, 2014                           Respectfully submitted,


                                               *s/Sarah Day Hurley*_____
                                               Sarah Day Hurley (Fed ID No. 7267)
                                               email: shurley@turnerpadget.com
                                               TURNER PADGET GRAHAM & LANEY, P.A.
                                               Post Office Box 1509
                                               Greenville, South Carolina 29602
                                               Telephone: (864) 552-4651
                                               Facsimile: (864) 282-5965

                                               ATTORNEYS FOR PLAINTIFF